WILLIS NORTON & COMPANY, Appellants, v. G. R. MELICK.

**Construction of Contract:** PRINCIPAL AND AGENT. A contract by one party, to furnish certain merchandise to another, to be sold by the latter, as the agent of the former, and providing for the remittance monthly, of the moneys received for the merchandise sold, and expressly reserving the title, ownership, and right of possession until payment in full, is a contract of agency and not of sale, and such agent is not absolutely liable if the goods are destroyed by fire, without his negligence.

**BAILMENT.** An undertaking, by an agent for the sale of goods to be furnished him by the principal, to keep the same in good order, is not an absolute undertaking to respond in damages for loss or destruction without his fault, but merely binds him to put them in a reasonably safe place.

*Appeal from Dallas District Court.*—HON. J. H. APPLEGATE, Judge.

THURSDAY, APRIL 9, 1896.

ACTION at law to recover damages for the alleged violation of a written contract. There was a demurrer to the petition, which was sustained, and judgment

was rendered for the defendant, for the costs of the action. Plaintiffs appeal.—*Affirmed.*

*Shortley & Harpel* for appellants.

*White & Clark* and *H. A. Hoyt* for appellee.

ROTHROCK, C. J.—The following is a copy of the written contract, upon which the action is founded: "This agreement, made this 1st day of September, A. D., 1893, between Willis Norton & Co., of North Topeka, Kansas, and G. R. Melick, of Perry, Iowa, witnesseth: The said Willis Norton & Co., agree to furnish to said ———, the following merchandise, to-wit: Two hundred 48- ℔. sacks Diamond flour, at $1.70 per cwt., track Perry, Iowa; twenty-five 48- ℔. sacks Reindeer flour, at $1.55 per cwt., track Perry, Iowa,—to be sold by said G. R. Melick for them as their agent, at prices not less than those set opposite said articles, respectively. And said G. R. Melick agrees to receive and accept the above merchandise, as agent of said Willis Norton & Co., and to pay freight and charges thereon, and to keep the same in good order, and sell the same as agent of said Willis Norton & Co., at not less than the above-named prices; and thirty days after the shipment of said merchandise, and every thirty days thereafter while this agreement remains in force, to render to said Willis Norton & Co., a statement showing all said merchandise on hand, as well as all merchandise sold since the date of shipment or last preceding report; and, further, to remit with each such report the money for all merchandise sold since the date of shipment of last preceding report. And said G. R. Melick further agrees that, if any of said merchandise is unsold at the expiration of ninety days from the date hereof, he will buy the same at the above-named prices, and pay

Willis Norton & Co. in cash therefor; but it is expressly agreed that the title, ownership and right of possession of said property shall be in said Willis Norton & Co., until the same shall be paid for in full. In witness whereof, the said parties have hereunto set their hands, the day and year first above written. [Signed] Willis Norton & Co. G. R. Melick." The flour was shipped to the defendant, and was received by him about September 6, 1893. On the twenty-fourth day of the same month it was totally destroyed by fire. It is not averred in the petition that the flour was destroyed because it was not stored in a proper place. It is alleged that the defendant "violated the terms of said contract, in that he failed to keep the said flour in good order, and permitted the same to be destroyed by fire, on or about the twenty-fourth day of. September, 1893," except such as he had sold before that time. There are no facts pleaded which show any negligence in reference to the manner in which the flour was stored and protected and kept in good order, as required by the contract.

The whole controversy in the court below, as shown by the petition and the demurrer, was whether there was a sale of the goods by the plaintiffs to the defendant, so that the defendant was absolutely liable to pay for them, even though they were destroyed by fire, without any negligence of the defendant. We think that there ought to be no question that the contract was a mere agency for the sale of the flour. It is expressly stated in the first paragraph that the flour was to be sold by the defendant for the plaintiffs, as their agent. This stipulation is repeated again and again, and there is the express agreement that the transaction is not a sale, but "that the title, ownership, and right of possession of said property shall be in Willis Norton & Co., until the

same shall be paid for in full." It is difficult to imagine how a contract of agency could be more strongly stated. It is even stipulated in the contract that, if any of the property "is unsold at the expiration of ninety days," the defendant will buy it, and pay cash therefor.

We are cited by counsel for appellant to a number of cases which, it is urged, support the claim that this contract is in effect a sale. We must decline to review the authorities cited. They do not involve the construction of a contract in substance like that entered into by the parties to this case. The real inquiry is, what was the intention of the parties to the contract? And that intention must prevail, and when it is plainly and unequivocally expressed in the writing that it is an agency, and not a sale, and the title does not pass, there is no room for construction, and adjudged cases upon other contracts are of no aid in reaching a correct conclusion.

II. A party to a contract like this may, no doubt, bind himself by express stipulation that he shall be liable as an insurer of the property. Such contracts have been held to be valid. See *David v. Ryan*, 47 Iowa, 642. But in *Seevers v. Gabel*, 94 Iowa, 75 (62 N. W. Rep. 669), this court held that a written contract of lease of personal property, containing a stipulation for returning the property "in as good condition as it now is, usual wear excepted," does not make the lessee liable in damages where the property has been destroyed by fire without fault on his part. The contract now before us does not contain any such a stringent stipulation. The undertaking to keep the flour in good order is not an absolute understanding to respond in damages for its loss or destruction without the fault of the defendant. It is no more than a promise to put it in a reasonably

safe place, to prevent damage to it by exposure to rain, dampness, or in any other way.

III.   It is urged in behalf of appellants that the averments of the petition are sufficient to charge the defendant with negligence in keeping the flour in good order.   It is sufficient to say in reference to this claim that negligence in caring for the flour, apart from its destruction by fire, is nowhere averred in the pleading. The judgment of the district court is AFFIRMED.