THE BUTTERICK PUBLISHING COMPANY v. C. D. BAILEY, Appellant.

**Contract:** SALE AND RETURN. A contract between a manufacturer and retail dealer provided that the dealer should act as special agent in the sale of certain patterns; that manufacturer should furnish patterns to a certain amount, and the dealer should pay for them half in cash and half by interest bearing standing credit; that dealer should pay for all other goods "purchased" from manufacturer before the fifteenth of the succeeding month; that old patterns might be exchanged for new ones, but not "in payment for goods ordered prior to the time of return;" that dealer's failure to keep in stock at least three hundred dollars worth of patterns should entitle the manufacturer to declare the contract forfeited, and the standing credit due; that either party might terminate the contract after a year, on three months' notice, and that, if so terminated, the dealer should have the right to return all patterns on hand to manufacturer and receive seventy five per cent of the price paid therefor. *Held*, a contract of sale and not a contract on "sale or return."

Loss of Goods by Fire. The loss by fire of goods obtained and partly paid for under a contract which obligated one party to exchange other goods for them, and, under certain conditions, to accept and pay a certain price for them, does not relieve the other party from liability to pay the balance due.

*Appeal from Dallas District Court.*—HON. J. H. APPLEGATE, Judge.

WEDNESDAY, MAY 11, 1898.

THE plaintiff and defendant executed the following agreement in writing: "Articles of Agreement between the Butterick Publishing Co., Limited, and C. D. Bailey,

of Adel, Iowa.   This agreement, made this 24th day of
April, 1894, between the Butterick Publishing Co., Lim-
ited, of the first part, and C. D. Bailey, of the second
part, witnesseth:   That the said Butterick Publishing
Co., Limited, for the consideration hereinafter men-
tioned, agree to grant, and do hereby grant, to the party
of the second part, the right to act as special agent for
the sale of their patterns in the town of Adel, state of
Iowa, for the term of one year from date, and upon the
following conditions:   Said party of the second part
.agree that——will at all times give, or cause to be given
(by a lady attendant), proper attention to the sale of
the patterns.   Said party of the second part also further
agrees that he will advertise, with advertising matter
which shall be ordered by party of the second part from
party of the first part, at such times as shall be thought
advisable by said Butterick Publishing Co., Limited, to
the amount of twenty (20) dollars per annum.   Neglect to
perform this obligation shall work a forfeit of the right
to return the patterns for money at the final closing of
this agreement.   Said Butterick Publishing Co., Lim-
ited, agree to furnish said party of the second part with
advertising matter, at their present prices for the same,
for the purpose of such advertising.   Said party of the
second part agree to pay all expenses incurred in the
transportation of goods, and further agree to pay to the
Butterick Publishing Co., Limited, for patterns to be
furnished by them, the sum of one hundred and fifty
(150) dollars, as follows:   Twenty-five (25) dollars on
signing contract; balance on or before July 1, 1894.
And in consideration that said party of the second part
agree to keep not less than three hundred (300) dollars
value in patterns at wholesale rates (40 per cent. of
retail prices) on hand for sale at all times during the
time this agreement shall remain in force, the party of
the first part agree to grant, and do hereby grant, to the

said party of the second part a standing credit, which shall continue during the time this agreement shall remain in force, to the amount of one hundred and fifty (150) dollars. This credit shall bear interest at the rate of four per cent. per annum during the whole time this contract shall continue, which interest shall be paid by party of the second part to party of the first part semi-annually on January 1st and July 1st of each year; and no excess of credit over the amount above specified shall be demanded. Said party of the second part also agree to pay for any and all other goods purchased from the said Butterick Publishing Co., Limited, promptly on or before the 15th day of the month succeeding the month in which the purchase is made. It is also expressly stipulated and agreed that if, at any time, the party of the second part shall not make the monthly payment as herein provided, said Butterick Publishing Co., Limited, may, at their option, without further notice, make a sight draft on the party of the second part for the amount due; and in case of neglect or refusal to pay such draft said Butterick Publishing Co., Limited, may declare this contract forfeited, and at an end; and, in case the interest of the party of the first part shall be neglected by the party of the second part to the extent that no payment shall be made for the term of three months, then said party of the second part shall forfeit all right to return patterns either for exchange or otherwise, and said party of the first part shall be relieved of all responsibility to party of the second part in all matters pertaining to this agreement. Said Butterick Publishing Co., Limited, or any party delegated by them, shall be allowed to examine and take account of pattern stock at any time they may so desire to do; and if at any time between March 1st and July 1st, or between September 1st and January 1st, of any year, said stock of patterns shall be found to be in

amount less than the amount hereinabove specified, then the above-specified standing credit in current funds, shall be due to the party of the first part from party of the second part and the amount hereinabove specified—one hundred and fifty (150) dollars—shall at once be paid by the party of the second part to the party of the first part, and said party of the first part shall be relieved from all obligations to continue a standing credit to the party of the second part, and this contract, at the option of the party of the first part shall, in all its provisions, be null and void, and said party of the first part shall be relieved from any obligation to exchange or redeem the stock of patterns said party of the second part may have on hand. In case said party of the second part shall perform his agreement as specified, then said party of the first part agree to allow said party of the second part to return old patterns in exchange for new ones, at the following rate and on the following conditions: Said party of the first part shall allow said party of the second part to exchange patterns purchased under this agreement at the rate of nine-tenths the sum paid for them; but they shall not be returnable in payment for goods ordered prior to the time of return; nor shall they be exchangeable for other goods than patterns; nor shall this rate of exchange apply on goods bought prior to date hereof. And, further, the patterns must have been procured direct from the party of the first part, and not through any other party, unless by written permission; and if any patterns shall have been stamped or marked (otherwise than by mark affixed by party of the first part at the time of sale) wet, opened, or in any way damaged or defaced, then they shall not be returnable. This agency for the sale of patterns manufactured by party of the first part shall not be removed by party of the second part from its original business location, or

assigned to other parties, nor shall any other patterns than those manufactured by the party of the first part be sold by the party of the second part, without the written consent of the Butterick Publishing Co., Limited. This contract shall remain in force for the term of one year from date, and thereafter continue until it shall have been terminated, in the following manner: At any time after the expiration of one year either party desirous of terminating this contract may give the other three months' notice, in writing, of a desire to do so; and upon the expiration of the three months following such notice, whether given by party of the first part or by party of the second part, all patterns held by party of the second part shall be returned to the party of the first part at their general office in New York, with a bill of the same. Failure or neglect to return, at the time above specified, all the returnable patterns said party of the second part may have on hand shall relieve the party of the first part from all responsibility in the matter of exchange or allowance in consideration of the return of such patterns, and the party of the first part may sue for and collect any sum owing by party of the second part, without taking into consideration the pattern stock said party may have on hand. But, in case the stipulations above specified shall be duly performed by the party of the second part, and the patterns shall be returned to the party of the first part at their general offices in New York, within one week,—either before or after,—the time above designated as the time of return, and if the provisions of this contract shall have been duly performed by the party of the second part, then said party of the first part agrees to pay to the party of the second part in current funds within thirty days from the time of the delivery to them of said patterns, seventy-five per cent. of the amount paid for same; but the patterns thus returned must have been procured direct

from the party of the first part, and not through any other party; and, if any patterns shall have been stamped or marked (otherwise than by mark affixed by party of the first part at time of sale) wet, opened, or in any way damaged or defaced, then they shall not be returnable. In witness of this agreement we have hereunto signed our names this twenty-fourth day of April, 1894. Done at Adel, state of Iowa. The Butterick Publishing Co., Limited, per H. A. Stearns. C. D. Bailey." The petition shows that in pursuance of the agreement plaintiff delivered to defendant patterns at wholesale rate, of the value of three hundred dollars, receiving therefor one hundred and fifty dollars, and extended to defendant a standing credit for one hundredred and fifty dollars, according to the terms of the contract; that defendant has violated the terms of the agreement by neglecting to keep on hand patterns as agreed; that he has permitted the patterns to become damaged and destroyed by fire, and has renounced his obligations under the contract; and judgment is asked for the amount of standing credit given to defendant, with interest thereon. Defendant demurred to the petition, which demurrer the court overruled, and thereupon the defendant filed an answer and counterclaim, to each of which the plaintiff demurred, and the demurrer as to both was sustained. Defendant electing to stand on his answer and counterclaim, judgment was entered for plaintiff, and the defendant appealed.— *Affirmed.*

*White & Clark* for appellant.

*Shortley & Harpel* for appellee.

GRANGER, J.—I. Noticing first the demurrer to the petition, appellant states the questions to be considered as follows: "(1) Whether the contract set out

in the petition expresses or implies a sale of goods to Mr. Bailey. (2) Whether any contingency has happened that renders Mr. Bailey liable to pay plaintiff any sum on account of the goods." A significant feature of the contract is this: That throughout its provisions there are none that justify a conclusion that the patterns are to be taken by defendant, and sold, and the proceeds of the sales to be accounted for to the plaintiff. The agreement was that the defendant should act as special agent in the sale of the patterns; that plaintiff should furnish patterns to a certain amount, and defendant should pay for them one-half in a specified time, and receive a standing credit for the other half, which credit was to bear interest. The meaning of the contract is that defendant should be the agent to sell patterns furnished by plaintiff, he (defendant) to pay for the same, and sell on his own account. While the parties, for certain purposes, treat the relationship as that of principal and agent, the obligations under the contract depend upon its conditions and terms. As we read the contract, patterns furnished by plaintiff, and paid for under the terms of the contract, passed entirely from the right or control of plaintiff, so that it could have no claim thereto, absolute or contingent. The right of return was optional with defendant. While, in the part of the contract providing for its termination, it is stated that when the notice is given all patterns held by party of the second part shall be returned to party of first part, the entire provision on the subject shows that, while plaintiff must receive and pay for them, when properly returned, defendant's neglect or refusal to return them gave to plaintiff no right except exemption from paying therefor under the stipulation for a return. There is what is called a contract "on sale or return," which Judge Story defines as an "agreement by which

goods are delivered by a wholesale dealer to a retail dealer to be paid for at a certain rate, if sold by the latter; and, if not sold, to be returned." Story, Sales, section 249. See 21 Am. & Eng. Enc. Law, 518, and authorities cited. It is thought by appellee that the transaction comes within such a rule, but we think its conditions are different, and indicate more conclusively a sale to the defendant. Except in view of a termination of the contract, there is no right of return in this case, as in the cases contemplated by the rule as to contracts on sale or return; but the contract merely gives the right to return old patterns in exchange for new ones, and the patterns so returned for exchange are designated as "patterns purchased under this agreement." It is also provided that patterns so returned "shall not be returnable in payment for goods ordered prior to the time of return." This provision is significant, and means that patterns of a particular purchase are not returnable in payment of that purchase, but, when returned, they must be exchanged for other patterns. The provision for return in case of a termination of the contract is simply one of a re-purchase by paying a specified sum therefor, and not as a return of property belonging to the plaintiff. This thought has strong support in language used in *Warder v. Hoover*, 51 Iowa, 491. Parmalee & Hurd received from Warder, Mitchell. & Co. certain "extras" to be sold on commission, with the right to return them if unsold; but they were required to pay for them on delivery  In the opinion it is said: "Where the agreement is that goods are to be paid for in cash on delivery, and the goods are delivered, it appears to us that there is a sale, whether the payment is made or not. The condition, as in this case, that they may be returned if not sold, is a condition that the sellers will re-purchase." This case is even stronger in support of the transaction being a sale,

for there was not only to be a payment for the patterns, but there was no right of return merely because there was no sale. There is no right of return in this case except for exchange, only upon a termination of the contract, and then to be paid for by the plaintiff. We think the conclusion that the transaction was a sale is not to be avoided. If there was a sale, the answer to appellant's second query, whether there is a contingency that renders defendant liable, is, that his acknowledged breach of the contract renders him liable for the credit extended him under the contract; that is, to pay the balance of the purchase price of the patterns received.

II. The answer to the petition admits the contract, and that he received the patterns, paying thereon one hundred and fifty dollars, and received credit of one hundred and fifty dollars, as provided in the contract. It is then alleged that in October, 1894, without fault on his part, the stock of patterns was accidentally destroyed by fire, because of which the patterns were not returned. By way of counterclaim the answer pleads the advance payment of the one hundred and fifty dollars, and seeks to recover the seventy-five per cent. thereof to which he would be entitled if he returned the patterns under the contract. A demurrer to both the answer and counterclaim was sustained, and the correctness of the ruling is now for consideration. On this branch of the case reliance seems to be placed on the fact of the destruction of the patterns by fire, so they could not be returned; and the rule is invoked that, where property is taken under an agreement to re-deliver it, and it is destroyed without the fault of the one taking it, he is absolved from his obligation; as where one who charters a vessel under an agreement to return it, and it is destroyed without his fault, he is excused from his obligation. *Young v.*

*Leary*, 135 N. Y. 569 (32 N. E. Rep. 607). See, also, *Seevers v. Gabel*, 94 Iowa, 75, and *Norton & Co. v. Melick*, 97 Iowa, 564. This case is far from being in line with those quoted, or applicable to the rule invoked by appellant. In the last-cited case the ownership of the property was reserved to the company with right of possession, and the contract was held to be one of agency. *Seevers v. Gabel* is a case where property was leased, and presents no such question as this case. Our consideration of the demurrer to the petition practically disposes of this branch of the case. Defendant purchased and owned the patterns. The plaintiff, under certain conditions, was obligated to exchange other patterns for them, and, under certain conditions, to accept and pay a certain price for them. It is nowhere provided that defendant's misfortune in the loss of them should create any liability on the part of plaintiff. The judgment will stand AFFIRMED.