## CHARLES S. JOHNSON *vs.* SAMUEL F. ALLEN.

Second Judicial District, Norwich, May Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The defendant guaranteed the due performance by *N* of the obligations assumed by him in a contract made with the plaintiff. After a lease to *N*, in the usual form, of premises owned by the plaintiff and consisting in part of a grist-mill, the contract provided that the plaintiff should buy grain for *N* to grind and sell at the mill, for which *N* should pay the cost price at the railroad station in his town and one cent per bushel in addition; that payments should be made to the plaintiff once each month for the grain sold by *N* during the

month immediately preceding; and that *N* should be responsible for all grain sold, should collect all bills therefor, and should sell to whom he saw fit. *Held* that upon a proper construction of this contract *N* was a bailee and liable as a purchaser, not for all grain delivered to him by the plaintiff, but only for such part thereof as he himself had sold or disposed of; and therefore the defendant, *N's* guarantor, could not be held liable upon a complaint which charged the transaction as an ordinary sale, and entirely failed to aver any default or nonpayment by *N* for grain sold by him.

[Argued May 31st—decided July 26th, 1898.]

ACTION against a guarantor to recover the value of grain furnished his co-obligor, brought to the Superior Court in New London County and tried to the court, *Shumway, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

In August, 1894, the plaintiff and Norman C. Allen entered into a certain indenture of lease in the ordinary form in use in this State, in and by which the plaintiff leased to the said Allen, for the term of one year from September 1st, 1894, certain premises in the town of Montville, consisting of land with a house, barn, sawmill and grist-mill thereon standing. Said indenture also contained the following agreement: " It is further understood and agreed between the parties hereunto, that the said party of the first part shall buy grain for the said party of the second part to grind and sell at the above described premises, but not in speculative quantities, said grain to be delivered to the said party of the second part on the cars at the Montville depot, so-called, on the Central Vermont Railroad ; and said party of the second part hereby agrees to pay for the said grain the cost price at said depot and one cent (.01) per bushel, additional for each bushel bought, and the said party of the second part agrees to pay the said party of the first part once each month for the grain sold by the said party of the second part during the month immediately preceding ; and it is further understood that the party of the second part shall be responsible for all grain sold, shall collect all the bills for the same, and shall sell to whom he sees fit.

" It is understood further between the parties hereto, that the party of the first part shall be in no way responsible for delay in the transit of grain nor for demurrage that may be charged for leaving cars too long loaded."

The contract of guaranty sued upon, duly signed by the defendant Samuel F. Allen, forming a part of said indenture and executed concurrently with it, reads as follows : " For and in consideration of the letting of the premises above described and for value received, I guarantee the punctual payment of the rent and performance of the covenants in the above agreement mentioned, to be made and performed by said lessee, without requiring any notice of non-payment or non-performance, or proof of notice or demand being made whereby to charge me therefor."

The complaint alleged in substance that Norman C. Allen, under and by virtue of said indenture, had " purchased grain of plaintiff to the amount of $4,000 ; " that he had neglected and refused to pay to the plaintiff monthly the money due to the plaintiff ; that he now owed the plaintiff for grain sold and delivered under said agreement the sum of $2,000 ; that the plaintiff had delivered said grain to Norman C. Allen relying upon said guaranty ; that the plaintiff had performed all the conditions of said indenture on his part to be performed ; and that the defendant now owed the plaintiff $2,000. The indenture and contract of guaranty were made, by reference, a part of the complaint, as Exhibit A.

The plaintiff also filed a bill of particulars purporting to set forth the state of the account between himself and Norman. It charged Norman with grain furnished to him, to the amount of about $3,700, with rent $375: and with other things which together make a total of $4,317.77 ; and it credited him with certain payments and other items which amounted in the whole to $2,137.59.

The defenses were three in number. The first admitted the execution and delivery of the contracts contained in Exhibit A, and denied all the other allegations of the complaint. The second set up the fact that after the indenture was delivered, Norman and the plaintiff, on the 18th

of December, 1894, without the consent of the defendant, had entered into a contract in writing, made a part of the defense, by reference, as Exhibit B, which modified and altered the agreement in the indenture on which the suit was brought; and that Norman had fully paid the plaintiff for all the items charged in the bill of particulars which were furnished prior to the 18th day of December, 1894.

Exhibit B, above referred to, reads as follows: "In consideration of promises made by Chas. S. Johnson in a lease dated the 22d day of August, 1894, to supply grain, hay, middlings *&c.* it is hereby agreed and understood that whatever said Johnson may buy and' has already bought is now and is to remain his property, with all book accounts I may have for the above described goods sold on credit, until actually paid for by me. Dated at Montville Connecticut this 18th day of December, 1894. (Signed), Norman C. Allen."

The third defense set up, in substance, a breach by the plaintiff of his agreement with Norman to buy and deliver grain, to the damage of Norman $2,000, and claimed that this sum should be applied in reduction of plaintiff's claim against Norman, stated in the bill of particulars. To the second and third defenses the plaintiff demurred, but the court overruled the demurrer, and the plaintiff then denied the matters set up in both answers.

The following is the substance of the finding made by the trial court: In August, 1894, the plaintiff and Norman entered into the indenture of lease aforesaid, and the defendant executed and delivered to the plaintiff the contract of guaranty aforesaid. Norman occupied the leased premises after September 1st, 1894, and until September 1st, 1895. Said contracts remained unchanged until December 18th, 1894, when the plaintiff, without the consent or knowledge of the defendant, requested and received of Norman the contract set out in Exhibit B. The lease mentioned in said Exhibit B is the indenture of lease aforesaid. The defendant had no knowledge of Exhibit B until after this suit was brought. The contract contained in Exhibit B continued in

full force as long as the plaintiff and Norman had any dealings with each other. Prior to the execution of Exhibit B the plaintiff furnished grain in the quantities and at the times stated in the bill of particulars; and after its execution the plaintiff, under it, furnished hay and grain at the times stated in his bill of particulars. Norman made payments to the plaintiff of the amounts and at the dates mentioned in the bill of particulars. All the rent has been paid by Norman, except the $75 due September 1st, 1895.

The finding concludes as follows: "No evidence was offered to prove, and I do not find that any grain or hay furnished at any time by the plaintiff to said Norman has been sold or disposed of by said Norman, except such as was paid for by him by the payments credited in the plaintiff's bill of particulars, and said bill of particulars correctly states the amount of hay and grain and the time when furnished."

Upon these facts the plaintiff requested the court to rule as follows: 1st. That the plaintiff was entitled to judgment. 2d. That the plaintiff was entitled to recover of the defendant the balance due to the plaintiff as shown by the bill of particulars. 3d. That if the court should find that the writing given on December 18th, was a material variance excusing the defendant from the further performance of the guaranty on his part, then the plaintiff was entitled to recover the amount due from the said Norman from August 22d, to said December 18th, 1894. 4th. That the plaintiff was entitled to recover of the defendant the amount due for rent during the occupancy of the said premises by the said Norman. 5th. That the plaintiff was entitled to recover of the defendant the sum of $746.42.

The court did not so rule, but overruled all of the claims of the plaintiff, and rendered judgment that the defendant recover his costs.

The errors assigned relate to the action of the court, (1) in overruling the demurrer, (2) in overruling the plaintiff's claims.

*Charles W. Comstock*, with whom was *Edwin C. Johnson, 2d*, for the appellant (plaintiff).

*Frank T. Brown*, for the appellee (defendant).

TORRANCE, J.   The principal questions in this case depend for their solution upon the construction of that part of the agreement between the plaintiff and Norman C. Allen which relates to the furnishing of grain by the former to the latter.

The plaintiff claims that when he furnished grain to Norman under the contract, the transaction was a sale ; that the grain became Norman's upon delivery; and that thereupon, whatever subsequently became of the grain, Norman became liable for the price of the grain, to be determined and paid as provided for in the agreement.   His complaint is based upon such a construction of the contract.   It alleges that Norman "had *purchased* grain of the plaintiff to the amount of $4,000," and that $2,000 is now due to the plaintiff from Norman, "for grain sold and delivered" to him by the plaintiff under said agreement.

We are of opinion that this is not the true construction. It is clearly inconsistent with some of the terms of the contract.   By the contract the plaintiff is to "buy grain for the party of the second part (*i. e.* Norman) to grind and sell" at the leased premises, to be delivered on the cars at the Montville depot; Norman is to pay for the grain the cost price at the depot, and one cent per bushel additional for each bushel bought; and Norman agrees to pay the plaintiff "once each month for the grain sold" by him during the month immediately preceding.   Up to this point it might perhaps fairly be claimed that the delivery of grain under the contract was intended to be a sale, although such a construction would not even then be free from doubt.   But the contract goes on to provide as follows: "And it is further understood that the party of the second part shall be responsible for all grain sold, shall collect all the bills for the same, and shall sell to whom he sees fit."   These provisions are clearly inconsistent with the claim that the grain became Norman's when delivered under the contract.   Norman agrees to pay only for what he sells, not for all that he re-

ceives. He is expressly made responsible for the grain sold by him, and he is expressly empowered to sell it " to whom he sees fit," and expressly authorized and obligated to " collect all the bills for the same." If the grain became his upon delivery, these provisions are entirely unnecessary. We cannot, however, regard them as surplusage, nor ignore them. We must take the contract as a whole as we find it, and give effect if possible to all its terms ; and we cannot do this if each delivery of grain under the contract is to be regarded as a sale.

We are of opinion that the contract is essentially one that contemplates a bailment of the grain upon each delivery, and not a sale. We think its essential provisions should be construed as follows : The plaintiff is to buy grain and deliver it to Norman ; it is to remain the property of the plaintiff, but Norman may grind it, and may sell it to whom he sees fit, and for such price, on such terms, in such quantities, and at such times as he sees fit ; he is, so far as sales by him are concerned, to be responsible only for what he sells or disposes of, and that, too, only to the extent of the price per bushel fixed by the contract ; if he sells at a profit the gain is his, if at a loss the loss is his ; and he and not the plaintiff is to collect the bills for grain so sold by him.

Under such a construction every delivery of grain to Norman was a bailment and not a sale. Norman agreed to pay, at the price fixed by the contract, only for such part of the grain bailed to him as he should sell or dispose of, and not for all that was bailed to him. This construction gives effect to all the terms of the contract and does violence to none of them.

Under such a construction the defendant would be liable, not for the default of Norman in failing to pay for all grain delivered to him, but only for his default in paying for all grain sold or disposed of by him. This being, as we think, the true construction of the agreement, it follows that there could be no recovery by the plaintiff in this action upon the present complaint. That, as we have seen, is based upon an entirely different construction of the contract. It alleges

that the sum claimed is due from Norman for grain sold and delivered to him, and that Norman refuses to pay such sum; while at the same time it shows that the contract of guaranty sued upon covers no such default.    Under the guaranty the defendant is not liable, so far as the grain is concerned, save for the default of Norman in paying for grain sold by him, and there is no allegation of any such default.    The complaint is therefore fatally defective, for it shows upon its face that the default of Norman for which the plaintiff sought to recover, was not embraced within the contract of guaranty.

In addition to this the court below has found in effect, that whatever grain Norman may have sold or disposed of, he has fully paid for.

Upon the complaint and the evidence, then, the court reached the result that the plaintiff was not entitled to recover, and under the circumstances no other result was possible.    This result was not and could not have been affected in any way by any of the rulings of which the plaintiff complains.    Whether these rulings were right or wrong, they did not and could not affect the complaint, nor the contracts set up in it, nor the evidence, nor the finding that nothing was due from Norman for sales of grain ; and these justify the judgment rendered, without reference to the effect of Exhibit B upon the contract of guaranty, or the question of counterclaim, or set-off, or anything else in the case.

The plaintiff's case against the defendant is and must be predicated upon some default of Norman's for which the defendant is responsible, embraced within the complaint, and the record fails to show any such default.    It is upon this fact, and not upon the effect of Exhibit B, or any of the other questions in the case, that the judgment rests.

In this view of the case it becomes unnecessary to consider at all the rulings of which the plaintiff complains, for it is of no consequence here whether they were or were not erroneous ; and upon the question whether they were right or wrong we express no opinion.

There is no error.

In this opinion the other judges concurred.