[No. 26180. *En Banc.* December 14, 1936.]

R. H. IRWIN, *Respondent*, v. PACIFIC·FRUIT & PRODUCE COMPANY, *Appellant.*[1]

*Cheney & Hutcheson* and *Walter J. Robinson, Jr.,* for appellant.

*Clark & Grady* and *Velikanje & Velikanje,* for respondent.

[1]Reported in 63 P. (2d) 382.

BEALS, J.—Plaintiff instituted this action for the purpose of recovering a balance which he alleged was due him, based upon the delivery by plaintiff to defendant of a quantity of potatoes grown by plaintiff during the year 1933. Plaintiff contended that he sold to defendant something over 500,000 pounds of potatoes at fifteen dollars per ton, for which he should have been paid by defendant $3,924.37, of which sum he admitted that he had received $3,400, leaving an unpaid balance of $524.37, for which he demanded judgment.

The defendant answered, denying any liability to plaintiff and affirmatively pleading that, during the month of April, 1934, the parties agreed upon a settlement of the deal, pursuant to which agreement defendant paid plaintiff a considerable sum in full satisfaction of all claim on plaintiff's part. Defendant further pleaded that the original contract between the parties was one of consignment and not of sale, and asked that the contract be reformed in one particular to show the true agreement of the parties. Defendant also pleaded that it had overpaid plaintiff, and asked for judgment on account of such overpayment.

Plaintiff having denied the affirmative allegations contained in defendant's answer, the action was tried to the court sitting without a jury, and resulted in findings of fact and conclusions of law in plaintiff's favor, followed by a judgment against defendant for the amount demanded by plaintiff. From this judgment, defendant has appealed, assigning error upon the overruling of its demurrer to plaintiff's complaint; upon the denial of its challenge to the sufficiency of the evidence; upon the entry of two findings of fact and one conclusion of law; upon the refusal of the trial court to grant a judgment against plaintiff; upon the denial of its motion for a new trial; and upon the entry of judgment in plaintiff's favor.

There is no dispute concerning the wording of the written contract entered into between the parties, the face of the contract reading as follows:

"CONTRACT TO BUY OR HANDLE

"PACIFIC FRUIT & PRODUCE COMPANY, a corporation, hereinafter called PACIFIC, has this day agreed to *handle* from *Ralph Irwin,* hereinafter referred to as GROWER, and GROWER has this day agreed to............................ the following produce to PACIFIC:

"*Entire crop. Estimated 200 ton Potatoes. Pacific to guarantee 15.00 per ton. When potatoes sold the first 2.00 over the 15.00 guarantee to apply on storage and transit charges. Proceeds over 17.00 to be split 50-50 between grower and Pacific.*

"Pack: *Bulk*

"Time of Delivery: *When ready.*

"Terms of Payment: *1000.00 advance on contract, balance when sold.* Grown during current season on the following described property, *Wenas,* located in *Yakima* County, State of *Wash.*

"GROWER agrees to deliver above described produce, properly packed and ready for shipment to PACIFIC, F. O. B. WAREHOUSE, at *Wapato,* at time herein specified, or if time cannot be specified, during shipping season as directed by PACIFIC. Cars loaded by GROWER shall be filled to full minimum capacity and GROWER shall be liable for all demurrage due to delay or default in loading.

"Reference is hereby made to the terms and conditions on the back hereof, which are hereby expressly agreed to be a part of this Contract. It is further understood and agreed that this Contract contains the entire agreement between the parties with respect to the subject matter hereof and that no agent of PACIFIC is authorized to make any modifications hereof unless they be written hereon.

"GROWER warrants his title to said produce and guarantees it is not subject to lien, chattel mortgage or any encumbrance whatsoever, except: ...............................

"PACIFIC FRUIT & PRODUCE COMPANY

"Dated................................193...... By CARDWELL

"A No. 1213 RALPH H. IRWIN, Grower."

(The portion written in italics appears in handwriting; the balance in print.)

Appellant contends that the contract should be reformed by limiting the fifteen dollar per ton guaranty to that portion of the potatoes grading U. S. No. 1. In this connection, we may say at the outset that we are convinced that the evidence does not support appellant's claim for reformation of the contract, and this phase of the case will not be further discussed.

February 1, 1934, respondent delivered to appellant an order in writing in the following form:

"To: PACIFIC FRUIT & PRODUCE COMPANY

"After deducting from the proceeds of the sale of my 1933 potato crop all advances made by you to me, including all advances made for expenses of furnishing seed, sacks, and for expenses of growing, harvesting, storing and selling said potatoes, I hereby authorize and direct you to pay to Yakima First National Bank out of the net proceeds that may be due to me from the sale of said potatoes the sum of $1100.00, or so much as said net proceeds will pay, and charge the same to my account.

"For a valuable consideration, the receipt whereof is hereby acknowledged, I do hereby assign, transfer and set over unto the said Yakima First National Bank the sum of $1100.00 of the net proceeds that may be due me from the sale of said potatoes after making the deductions aforesaid.

"DATED at Yakima, Washington, this 1st day of February, 1934. RALPH H. IRWIN
"ACCEPTED: March 20-34
"PAC. FRUIT & PROD. CO.
"By: H. W. DONAHEY."

February 24th following, he delivered to appellant another order in the following form:

"To THE PACIFIC FRUIT & PRODUCE COMPANY:

"Pay to the John Dower Lumber Company, of Selah, Washington, three hundred seventy and 45/100 dollars ($370.45) with interest at 8% per annum from

November 20, 1933 until paid, together with a thirty-five dollar ($35.00) collection fee, out of the first moneys due me upon the sale of my potatoes now in storage with you, after all deductions have been made for storage, handling, etc., according to contract.

"Dated this 24th day of February, 1934.

"RALPH H. IRWIN

"The within and foregoing order is accepted this ................................, day of February, 1934.

"PACIFIC FRUIT & PRODUCE COMPANY

"By H. W. DONAHEY."

April 16, 1934, a transaction was had between the parties which resulted in the delivery to respondent by appellant of the following statement:

"In Account With
"PACIFIC FRUIT & PRODUCE Co.
"Packers and Car Lot Shippers
"Distributors April 16, 1934

| "Ralph Irwin | Branch—Wapato. | |
|---|---|---|
| | Dr. | Cr. |
| "440,000 lbs Spuds at $15.00 | | 3300.00 |
| "80 Sx Seed No. 1496 | | 100.00 |
| "Checks | 1600.00 | |
| " Seed loan | 307.85 | |
| " Yak. 1st Nat | 500.00 | |
| " Irwin | 392.15 | |
| "Balance on books | 600.00 | |
| | 3400.00 | 3400.00" |

in accordance with which, subject to a slight increase in the check payable to the Yakima First National Bank, respondent received appellant's check for $527, which he endorsed and cashed, and which appellant contends respondent accepted as a final settlement of the transaction here in controversy.

Respondent is correct in contending that the contract, having been prepared by appellant, should be construed most strongly against it. *Stephenson v. Kenworthy Grain & Milling Co.*, 186 Wash. 114, 56

P. (2d) 1301. This rule, of course, applies only to portions of a contract which require judicial construction or interpretation.

 Considering such a question as is here presented, the basic question is, what was the intention of the parties? Did they contemplate a reservation of title, or a transfer thereof? When it is contended that the contract itself does not disclose the intention of the parties, "regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and circumstances of the case." Rem. Rev. Stat., § 5836-18 [P. C. § 6227-18], subd. (2).

The contract was written upon a printed form so prepared that it could be filled out to accomplish either a contract of purchase or one of handling only. In the line left blank for the word which should designate the class of contract to be executed, plainly appears the written word "handle." This, of course, indicates that the contract was one of consignment and not of purchase.

Respondent argues that the provision of the contract whereby appellant guaranteed respondent fifteen dollars a ton is inconsistent with a contract of handling. We cannot follow this argument. While under such circumstances a guaranty to appellant might be unusual, it is not at all inconsistent with a contract of bailment.

In the case of *Johnson v. Allen,* 70 Conn. 738, 40 Atl. 1056, the supreme court of errors of Connecticut held that a contract, by the terms of which one party agreed to pay the other the cost price of grain to be delivered, plus one cent per bushel, was a consignment contract. Certain provisions of the contract indicated a sale, but concerning the portions of the agreement above referred to, the court said:

"We are of opinion that the contract is essentially one that contemplates a bailment of the grain upon each delivery, and not a sale. We think its essential provisions should be construed as follows: The plaintiff is to buy grain and deliver it to Norman; it is to remain the property of the plaintiff, but Norman may grind it, and may sell it to whom he sees fit, and for such price, on such terms, in such quantities, and at such times as he sees fit; he is, so far as sales by him are concerned, to be responsible only for what he sells or disposes of, and that, too, only to the extent of the price per bushel fixed by the contract; if he sells at a profit the gain is his, if at a loss the loss is his; and he and not the plaintiff is to collect the bills for grain so sold by him.

"Under such a construction every delivery of grain to Norman was a bailment and not a sale."

In the same case, the court held that a guaranty of a minimum return was not inconsistent with a contract of bailment.

In the case of *Caesar Misch Incorporation v. Mosheim,* 123 App. Div. 322, 107 N. Y. Supp. 1092, it appeared that the owner of a stock of goods entered into a contract with an auctioneer, whereby the latter agreed to advance five thousand dollars on the merchandise, which was to be sold at public auction, all money received in excess of the sum of five thousand dollars to be divided equally between the parties, the auctioneer guaranteeing that the goods would bring at least six thousand dollars. In an action on the contract, on appeal, the appellate division held that the contract was one of bailment and not of sale, and the questions presented bear a striking resemblance to those in the case at bar.

The printed form used in preparing the contract between the parties gives ample notice that it may be filled out either as a contract of sale or one of consignment. Respondent had been engaged in the business

of growing and selling crops since 1922. He stated that, prior to this transaction, agents had accepted his crops on consignment and sold the same pursuant to such a contract. He had also sold his crops outright. He stated that this was the first contract he had made under which a minimum price had been guaranteed to him. The basic designation of this contract as one of handling carries great weight, and before the contract can be construed as one of sale, it must clearly appear that, by the agreement or acts of the parties, the clearly expressed basis of the contract was changed. We find nothing in the contract itself which is inconsistent with a bailment.

A similar question was considered by the supreme court of California in the case of *Pugh v. Porter Bros. Co.*, 118 Cal. 628, 50 Pac. 772, which concerned a consignment of raisins to a commission merchant who guaranteed a minimum return. Concerning this phase of the case, the court, referring to the consignee, said:

"His position under the guaranty is similar to that which would have arisen had he taken the goods on a *del credere* commission, only that, instead of merely guaranteeing the sales that he may make, he also guarantees that the goods shall be sold for a fixed amount."

In the later case of *Moulton v. Williams Fruit Corp.*, 14 P. (2d) (Cal. App.) 88, the court of appeal of California, considering a contract for the delivery of grapes on consignment to a shipper who guaranteed a return of fifteen dollars per ton, said:

"The defendant asserts that the contracts made between the dealer and the producers show a sale and not a consignment. The statement is not sustained by the record. Before the blanks were filled, each contract was a clean-cut contract of consignment. In each contract, with pen and ink, there was inserted '$15 per ton guarantee.' Stressing the matter of that insertion,

the defendant claims that it converted a contract of consignment into a contract of sale. We think it had no such effect. Each document was but a consignment contract which guaranteed to the grower $15 per ton. As such it was enforceable in this state. . . . The defendant says: 'In the case at bar it is not merely a consignment, because the produce dealer guarantees to the grower a price of $15 per ton—this makes it a sale, and we are not liable on the bond for the purchase price.' It will be conceded at once that cases can be conceived in which the parties executed a contract to buy and sell whereas it might have been the intention of one or both to execute a contract of consignment containing a guaranty of the price or some other guarantee. In the instant case it will suffice to state that the words used by the contracting parties did not constitute a contract to buy and sell, but did constitute a contract of consignment. The fact that the contract contained a guaranty of the price was not out of the ordinary. Such contracts are common and are enforceable. *Pugh v. Porter Brothers Co., supra;* 25 C. J. 367.''

On appeal to the supreme court of California, that court (*Moulton v. Williams Fruit Corp.*, 218 Cal. 106, 21 P. (2d) 936), in affirming the decision of the inferior court, said:

''The contract was one of consignment and not of sale. The presence of the guaranty did not alter its essential features. Title to the goods did not pass until sale was made by the factor. (*Pugh v. Porter Bros.*, 118 Cal. 628 [50 Pac. 772]). The guaranty was but an inducement to the grower to enter into the contract.''

The principle of these decisions was approved by the court of appeals of California in the case of *People v. Jarvis*, 135 Cal. App. 288, 27 P. (2d) 77.

In the case of *Sturm v. Boker*, 150 U. S. 312, 14 S. Ct. 99, the supreme court of the United States, in construing a contract for the delivery of arms, held that

the contract was one of consignment and not of sale. In the course of its opinion, the court said:

"A bailee may, however, enlarge his legal responsibility by contract, express or fairly implied, and render himself liable for the loss or destruction of the goods committed to his care—the bailment or compensation to be received therefor being a sufficient consideration for such an undertaking. . . .

"He (complainant) assumed the expenses of transporting the goods to Mexico, the duty of selling them to the best advantage after they reached there, the obligation to account to the defendants for the price at which they might be sold, less one-half of the profits in excess of the invoice price, and if not sold, he was to return the specific articles to the defendants free of expense."

The cases of *Ludvigh v. American Woolen Co.*, 231 U. S. 522, 34 S. Ct. 161; *In re Columbus Buggy Co.*, 143 Fed. 859; *General Electric Co. v. Brower*, 221 Fed. 597; *De Raad v. Nash-De Camp Co.*, 132 Cal. App. 448, 23 P. (2d) 68; and *Mann v. Crenshaw & Co.*, 158 Va. 193, 163 S. E. 375, should also be read in this connection.

In the case of *Holbert v. Keller*, 161 Iowa 723, 142 N. W. 962, the supreme court of Iowa used the following language:

"The fixing in advance the price at which a consignee for sale must account for property delivered to him and providing that he may make settlement in promissory notes taken by him upon such sales, with or without his personal guaranty as may be agreed upon, is a provision which is extremely common in the business world and has no effect to convert what would be otherwise a mere consignment into a sale. If the party receiving the consignment has enough confidence in his judgment of market values to satisfy him that he can afford to assume the risk of undertaking to sell the property for an amount which will enable him to settle with his consignor at the stipulated price and leave him a margin sufficient to pay all the expenses of the

consignment and afford him a reasonable profit, there is no reason in law why he may not enter into such a contract without assuming the obligations of a purchaser.''

In connection with this phase of the case, it must be borne in mind that, in cases of doubt, a contract will generally be considered as one of bailment, rather than a sale.

In the case of *Dryden v. Michigan State Industries,* 66 F. (2d) 950, the court expressed this rule in the following language:

''In determining such questions, two matters must be borne in mind. First, that 'the ordinary or common-law liabilities of a bailee may be enlarged, without destroying the essential character of the contract' [*In re Eichengreen* (D. C.) 18 F. (2d) 101, 104, affirmed *Reliance Shoe Co. v. Manly,* 25 F. (2d) 381 (C. C. A. 4); *Sturm v. Boker,* 150 U. S. 312, 330, 14 S. Ct. 99, 37 L. Ed. 1093; *In re Galt,* 120 F. 64, 68 (C. C. A. 7)], and consequently too much emphasis should not be put on provisions having that effect only.

. . .

''This court has announced the rule of construction to be that where such a contract is ambiguous the doubt must be resolved in favor of the bailment. *In re Smith & Nixon Piano Co.* (C. C. A.) 149 F. 111, 112; also, see *In re Harris & Bacherig,* 214 F. 482 (D. C. M. D. Tenn.) opinion by Sanford, later Mr. Justice Sanford.

''Therefore, while appellant properly may enter this issue, it does so with the burden that the conduct of the parties must 'either expressly or by necessary inference' (*In re Harris & Bacherig, supra,* page 482 of 214 F.) establish its position.''

In the case of *Hansen Service v. Lunn,* 155 Wash. 182, 283 Pac. 695, this court laid down the proposition that

''It is not necessary, where the contract is one of consignment or agency, that a provision be incorporated in the contract expressly reserving title in the con-

signor, as title remains in the consignor as a matter of course. 23 R. C. L., p. 1217.''

Respondent cites many authorities which it is contended support his position that the agreement between the parties amounted to a sale. In the case of *Yakima Fruit Growers Ass'n v. Hall,* 180 Wash. 365, 40 P. (2d) 123, it appeared that a marketing agreement was orally modified by substituting a guaranty of fifteen dollars a ton for certain prunes, and in addition the grower to receive such sum per ton as the prunes might bring net above fifteen dollars. The principal question discussed and decided by the court was whether or not the contract was *ultra vires* on the part of the corporation which accepted the prunes from the grower. The court, without setting forth the terms of the contract other than as above stated, referred to the same as one of sale and not of guaranty. In the absence of a more complete statement of the terms of the contract, the decision cannot be considered as controlling upon the questions here presented.

In the case of *McGaw v. Hanway,* 120 Md. 197, 87 Atl. 666, Ann Cas. 1915A, 601, the defendant delivered to the plaintiff three thousand cases of tomatoes and received in advance $1.50 per case. On sale, the tomatoes produced less than the amount advanced, and the commission merchant sued the defendant to recover one-half of the deficiency. The court held that no recovery could be had. Some of the language of the opinion supports respondent's contention here, but we do not care to follow it in deciding the issues here presented.

We have read the other authorities cited, but they differ so extensively on the facts from those here presented that we do not consider any of them directly in point.

The parties to this action definitely and positively at

the very outset designated their contract as one of handling. Several months later, respondent signed two orders addressed to appellant, directing it to pay two of his creditors certain sums. One of these orders referred to the proceeds "of the sale of my 1933 potato crop;" the second, which is much more significant, referred to "moneys due me upon the sale of my potatoes now in storage with you." It does not appear that respondent ever demanded money of appellant, upon the contention that he had sold the potatoes at fifteen dollars per ton, until just prior to the institution of this action.

In this connection, some portions of respondent's testimony are significant. He stated that sometime early in 1934, he received from respondent six hundred dollars. In response to the question, "How did you come to get that?" he answered,

"It was in the form of an advance. I just went down and told them I needed six hundred dollars or something like that and they wrote me a check."

Later, referring to the transactions held between the parties April 16 and 17, 1934, respondent stated:

"These last checks issued to me were issued to me on the basis of the potatoes they claimed they had put in cold storage, my potatoes."

We are convinced that the trial court erred in failing to hold that the contract between the parties was one of bailment and not of sale. This being true, the action was prematurely brought, as no balance could be demanded by respondent until the potatoes were sold. While the trial court correctly stated that, in many cases, no time of performance being specifically agreed to, a reasonable time will be intended, plaintiff cannot here contend that an unreasonable time had elapsed, as it clearly appears from the evidence that

the potatoes were held in storage with respondent's complete acquiescence.

In any event, we are convinced that it must be held that, during the month of April, 1934, the parties made a complete settlement, and that thereby all respondent's rights under the contract were terminated. Under date April 16th, appellant delivered three checks; two to respondent's order and that of another, aggregating $807.85, and one to respondent's order for $392.15. Thereafter, appellant delivered to respondent one check to the joint order of himself and another for $573, and another to respondent's order for $527. At the same time, the statement of account bearing date April 16th, above set forth, was prepared, and a copy thereof delivered to respondent. The discrepancy between the amounts of the checks as hereinabove set forth and the checks shown on the statement was occasioned by respondent's request that the $500 check to the Yakima First National Bank be increased to $573, which decreased respondent's $600 balance to $527.

As to what was said between the parties at the time these checks were prepared and delivered, the testimony is in dispute, respondent contending that the payments were not made in full settlement, while appellant contends that it was agreed that the payments constituted a complete adjustment. It is admitted that respondent at this time received the statement of account above quoted. It is inconceivable that this settlement was other than final. Respondent admits that the transaction, in so far as the drawing and delivery of the checks is concerned, occurred as stated. He received his checks and cashed them. He denies some of the conversations which appellant's witnesses stated took place, and denies that he accepted the money which appellant paid to him or on his order as full

settlement of all claim on his part against respondent. The actions of the parties speak louder than their words, and, however the adjustment be characterized, we hold that it was final, and that the respective rights and obligations of the parties were thereby fully terminated. See, Restatement of the Law, Contracts, § 420, and illustration 1; also, III Williston on Contracts (1920), § 1854.

The judgment appealed from is accordingly reversed, with instructions to the trial court to dismiss the action.

BLAKE, MAIN, MITCHELL, TOLMAN, STEINERT, and GERAGHTY, JJ., concur.

HOLCOMB, J. (dissenting)—The majority misconstrues the contract as one of consignment. That being the erroneous basis upon which the opinion proceeds, it renders all of the citations relied upon by the majority utterly inapt.

While it is not always easy to define the distinction between sales and consignments, upon this contract and the manifest intent of the parties, as found by the trial court, there should be no difficulty whatever in defining it as a sale.

Although the word "handle" is used in the contract, put there by appellant's agent, its force is completely taken away by the other provisions of the contract. The contract, which was prepared by appellant, is to be construed most strongly against appellant, as the majority concede. It is also apparent that appellant was not as successful as anticipated by it in its speculative plan when the contract was entered into. It put the potatoes in cold storage and held them for a higher market which did not recur, although at one time it could have sold them for over thirty dollars per ton. This decision unjustly deprives respondent of the benefits of his bargain and is not right.

No brokerage or commission was ever paid or agreed to be paid by respondent to appellant. By the contract and by the acts of all of the parties, all payments came from appellant to respondent. Title to the potatoes passed to appellant on delivery to its warehouse. Had a fire occurred the next week and the warehouse and potatoes been burned, this court, nor any other reputable court, would ever hold that the loss would fall upon respondent.

Whenever goods are delivered to another who agrees to pay a price therefor and has exclusive control over them with power to sell and fix the prices, with no agreement to return any that may not be sold and no obligation to report or account for sales made, there is a sale and not a consignment. The distinction between a contract of sale and a consignment is that, in the case of a sale, the title passes to the buyer, while in the case of a consignment to a factor, the possession passes to the factor, but the title remains in the consignor. Where goods are delivered by one party to another, to sell for the party delivering them, it creates the relation of agency, and the title remains in the principal. If, however, it appears from the whole agreement that it is the intention of the parties that the title to the goods is to pass to the party receiving them, for a price to be paid by him, then the transaction is a sale. 11 R. C. L. 755. That is the consensus of almost universal authority. To the same effect is 6 C. J. 1091-92.

It is inconceivable to me how it can be considered that the contract before us is a consignment. That is contrary to our own cases as well as the great weight of authority.

Respondent also contradicted the testimony of appellant's bookkeeper that a receipt issued by it on one

of its printed forms was accepted as full settlement, as stated by the majority.

The trial judge believed the testimony of respondent, and there is no reason why we should disturb it. On the contrary, there is every reason why it should be approved.

The judgment should be affirmed.

MILLARD, C. J., concurs with HOLCOMB, J.