**In re H. M. HODGES & BRO., Inc.**

No. 20137.

District Court, D. Connecticut.

March 19, 1941.

Chambers, Hesselmeyer & Grimes, F. C. Hesselmeyer and T. A. Grimes, all of New Haven, Conn., for debtor.

Bernard P. Kopkind, of New Haven, Conn., for claimant.

HINCKS, District Judge.

Sessions-Gifford Company, Inc., petitioned to reclaim some linseed oil in the hands of the debtor when these proceedings intervened, the claim being that the petitioner was the owner thereof and that the debtor had the property only on consignment. The Referee denied the petition, and of this order the petitioner now seeks a review.

By the original agreement, which was entered into in April, 1937, the petitioner was to make shipments from time to time of linseed oil which the debtor would store for the petitioner and draw upon as needed to fill demands of its customers. The petitioner was to bill the debtor for five drums forthwith and thereafter at the end of each month the debtor was to report the amount of its withdrawals for the past month whereupon the petitioner was to bill the debtor for the amount thus withdrawn.

The agreement had no limitation as to its · duration or the volume of property to be included therein. In practice it appears that each shipment lasted the debtor's purposes several months. Since the agreement thus did not purport to state a self-contained contract, it is necessary to infer that each shipment constituted a separate contract to which the terms of the continuing agreement attached.

I incline to view these first contracts as constituting bailments rather than sales. Cf. Harris v. Coe, 71 Conn. 157, 41 A. 552; and Johnson v. Allen, 70 Conn. 738, 40 A. 1056. When the shipment was received the debtor gave a "warehouse receipt" therefor. That the bailee had a continuing option to purchase if and when desired is not inconsistent with this view, provided the debtor was not obligated to purchase,—was at all times at liberty, without breach of contract, to return what it had not used. As was observed in Glenn on Fraudulent Conveyances and Preferences (1940) Vol. II, 944: "If he may return the goods, it is a consignment agreement in the true sense; if not, there is a sale—conditional at best, and more probably absolute * * *."

To be sure, it would be scarcely accurate to describe the storage arrangement here involved as a "consignment". For as to the material withdrawn the debtor stood as a purchaser rather than as a consignee selling to others as petitioner's agent. But if the unrestricted right of return is a proper test for the presence of a consignment, it is equally effective as a test to determine a

bailment. After all, the ultimate question is whether or not a sale occurred whereby title passed. And if a sale is negatived by a right of return, it is immaterial whether the transaction was a consignment or a bailment.

If the petitioner had used a local warehouse, not connected with the debtor, as a distributing center, giving the debtor the right to draw at will from the warehouse, I suppose no one would have questioned the validity of the bailment as to the goods in storage in the warehouse. It does not necessarily follow that the situation is otherwise here where the debtor has acted as warehouseman. Cf. Johnson v. Allen, 70 Conn. 738, 40 A. 1056. To be sure, the debtor's possession gives support for the summary jurisdiction of the bankruptcy court. Further, the twofold relationship, (1) that of bailee as to goods in storage and (2) debtor for the price of goods withdrawn, properly subjects the transaction to ·close scrutiny. Perhaps as to goods of another character,—goods subject to depreciation for shopwear, for instance,—an arrangement such as this would not have permitted the inference that the alleged bailee had a right of return. And if the arrangement had been made on the eve of bankruptcy doubtless there would be more ground for the inference that the true transaction was a sale cloaked as a consignment to protect the "consignor" in the event of bankruptcy.

But here, where the depreciation of the goods was a negligible factor, and the arrangement had continued several years prior to bankruptcy, the more natural inference is that the real transaction was indeed a bailment as to the material in storage,—that the debtor might return at will. And this view is supported, rather than disparaged, by the fact that the debtor was under express obligation forthwith to withdraw the first five drums. From that requirement, the absence of all express obligation to purchase the remainder takes on added significance. And if, indeed, the debtor was free to return the property which it held in storage, its course of dealing with the property withdrawn would have little significance.

■ But at a later stage, notwithstanding the oral testimony of the petitioner's witnesses, its writings demonstrate that the original agreement was changed. Thus in Exhibit 2, a letter written by the petitioner to the debtor on January 2, 1940, it was said with respect to the shipment then in the possession of the debtor: "According to the terms on this contract, the oil was all to be billed out before the end of 1939. We are pleased to advise you that we are in a position to extend this contract over the first three months of 1940. However, we must ask that this oil be all reported out by the end of March. We would suggest that you report out equal shipments, namely, six drums in January, six drums in February, and five drums in March. If you handle this in this manner, it will automatically be taken care of and will eliminate the necessity of billing any unused portion at the end of March."

Here was stated an arrangement whereby the debtor should "report out" within a stated time, and thus become liable for the purchase price of withdrawals from the material in storage irrespective of its business needs, thus surrendering its former right of return. If, indeed, the debtor was to save its right to return the material in storage for which it had no use, there would have been no talk of "the necessity of billing the unused portion at the end of March."

Nor can this letter be viewed as a mere suggestion lacking any legal effect. For in the letter was a request that the debtor "accept the above". Definitely the petitioner was making a formal offer. And just as clear is the debtor's acceptance of the offer. For the debtor endorsed thereon, over its signature, "We accept the above."

And so, irrespective of the legal effect of the original agreement and the rights applicable to the earlier shipments, there can be no doubt that in respect of the last shipment, part of which was on hand when bankruptcy intervened, the debtor had surrendered its right to return so much thereof as it should not use, and had made a legal commitment to become liable for the purchase price thereof. As to the material then on hand, at least, the petitioner had taken on the status of a general creditor.

It follows that the petition in review should be dismissed and the order of the Referee confirmed, and it is so ordered.