## Gricar v. Bairhalter

*Harry L. Lentchner*, for plaintiff.

*Robert W. Smiley* and *Brandt, Riester, Brandt & Malone*, for defendant.

SOFFEL, J., February 7, 1957.—This is an action in replevin. Plaintiff, Louis Gricar, seeks to recover from

defendant, Edwin Bairhalter, possession of a 1951 Truckstell Ford Truck, model B-9000875, serial no. K-34963, valued at $2,500. This case was tried without a jury before Soffel, J., on January 23 1955.

From the testimony taken at the trial, the court makes these findings of fact:

1. Plaintiff purchased his 1951 Truckstell Ford Truck in 1953 at McKeesport.

2. On or about September 25, 1955, plaintiff drove his 1951 Truckstell Ford Truck to Ben Foreman's Used Car Lot situated on Frankstown Avenue, Wilkinsburg, directing the said Ben Foreman to find a prospective purchaser.

3. Plaintiff left his truck on said lot, but locked it and retained the certificate of title.

4. On or about October 4, 1955, Ben Foreman inserted in the Pittsburgh Post-Gazette the following advertisement:

"FORD '51 dump Tandem, very clean, low mileage. Terms if necessary. CH-1-9252—HA-1-8139"

5. Defendant, an excavating contractor desiring to purchase a used truck, saw the advertisement in the Pittsburgh Post-Gazette, called one of the phone numbers and thus contacted the Foreman office.

6. On or about October 10, 1955, defendant drove to the Foreman office in Wilkinsburg and was taken by an employe to the used car lot on Frankstown Avenue, where he met Ben Foreman and inspected the truck.

7. Defendant there agreed to purchase the truck and drove it to his home in Ross Township, Foreman driving defendant's car.

8. The deal was closed in defendant's home that same evening. Foreman sold the said 1951 Truckstell Ford Truck to defendant in consideration of the sum of $2,500 paid him by the defendant, plus a 1952 Dodge Truck, title to which was assigned by defend-

ant to Foreman and delivery made to him. In addition, defendant paid Foreman the sum of $134 to cover the cost of transfer of title and 1955 registration plates.

9. Before closing the deal, defendant asked Foreman whether it was not necessary to go before a notary public to have the papers properly acknowledged and was assured this would be done in Foreman's office by his own notary.

10. Defendant signed certain papers, including form RVT-5-100M-11-50 printed by the Commonwealth of Pennsylvania, Department of Revenue, Bureau of Motor Vehicles at Harrisburg, entitled "Reassignment of Certificate of Title." In heavy black print, there appeared the following: "This form will not be accepted unless attached to the assigned Certificate of Title." Defendant admits that he did not read the papers he signed.

11. Foreman transferred his own dealer's plate to the Ford truck and assured defendant that he would receive the certificate of title in about 30 days.

12. Foreman never paid plaintiff any money for his truck and defendant never received his license plates or certificate of title.

13. Foreman was subsequently indicated in criminal court for fraudulent conversion, tried, found guilty and served a sentence.

### Discussion

Under the facts set forth, is plaintiff entitled to recover from defendant the Ford truck or its value? We are of the opinion that he is not, for the reason that defendant was a bona fide purchaser for value without knowing of any defects or infirmities in the title.

The provisions of the Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 2-403, 12A. PS §2-403, which became effective July 1, 1954, control and govern

this case. The pertinent provisions are set forth in subsections (2) and (3):

Subsection (2) provides:

"Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."

Subsection (3) provides:

" 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurment of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

The code defines "Buyer in ordinary course of business" as follows:

" 'Buyer in ordinary course of business' means a person who buys goods in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker or a person buying goods from a farmer. 'Buying' may be for cash or on secured or unsecured credit and includes receiving goods, securities or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt": Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 1-201(9), 12 A. PS §1-201(9).

According to the undisputed facts, Foreman was a merchant who was dealing in automobiles. He was in the business of selling used cars and trucks. For this purpose, he maintained a used car lot on Frankstown Avenue. These facts were clearly established by plaintiff's testimony.

Plaintiff entrusted the possession of the truck in question to Foreman in accord with the definition of

"entrusting" as set forth in the code. He delivered it to Foreman, parked it on the used car lot and left it there for Foreman to find a buyer. So far as defendant is concerned, any restriction on the right of Foreman to sell the truck imposed by plaintiff, of which defendant had no knowledge, is immaterial.

By entrusting the possession of the truck to Foreman, plaintiff gave him power to transfer all of his rights to a "buyer in ordinary course of business". Foreman advertised the truck for sale. Defendant answered the advertisement, inspected the truck on the used car lot, agreed to purchase it and drove it to his home where the deal was consummated by payment to Foreman of $2,500 cash, assignment of title to a Dodge truck and payment of $134 for transfer of title and license plates. By this transaction, Foreman transferred all rights of plaintiff to defendant if the latter was a buyer in ordinary course of business.

Defendant was a buyer in ordinary course of business as defined by the code. The transaction was in the ordinary course of business affairs; it was not a bulk sale nor a transfer to secure or satisfy a pre-existing money debt; it was a simple cash sale. Foreman was in the business of selling used cars and trucks; he was neither a pawnbroker nor a farmer. Moreover, defendant knew nothing of plaintiff's interest in said truck until December 1955, when the latter asserted his claim and demanded its return. Plaintiff by his own action in driving this truck to Foreman's lot and entrusting its possession to Foreman set in motion the chain of events that led ultimately to its sale to defendant. While it is true defendant did not read the papers he signed, we doubt that would have been sufficient to put him on his guard. Certainly it in no way affects his right to retain the truck. There is an old Latin maxim that

seems to have application in the instant case: "In pari delicto potior est conditio defendentis."

Judgment will, therefore, be entered in favor of defendant.

### Conclusions of Law

1. Defendant was a bona fide purchaser for value without notice of any defects or infirmities in title: 46 Am. Jur., Sales, §465, page 630.

2. Plaintiff entrusted the possession of his truck to Foreman, the merchant who dealt in goods of that kind, thus conferring upon him power to transfer all rights and authority to a buyer in the ordinary course of business.

3. Defendant was a buyer in the ordinary course of business.

### Order

And now, to wit, February 7, 1957, this case having come on for trial without a jury, the court finds in favor of defendant.