Irving **BRODSKY**

v.

The **PERTH AMBOY NATIONAL BANK,**
**A Banking Corporation Organized Un-**
**der the Laws of the United States, Ap-**
**pellant.**

No. 12558.

United States Court of Appeals
Third Circuit.

Argued June 10, 1958.

Decided Oct. 7, 1958.

Arthur J. Sills, Perth Amboy, N. J.
(Wilentz, Goldman, Spitzer & Sills,
Perth Amboy, N. J., on the brief), for
appellant.

Morton Stavis, Newark, N. J. (Gross,
Goldberger & Stavis, Newark, N. J., on
the brief), for appellee.

Before KALODNER, STALEY and
HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This appeal arises out of the dismissal
by the district court of a counterclaim
asserted by the Perth Amboy National
Bank ("Bank") against Irving Brodsky.
The district court based its dismissal
both on the failure of Bank to join indis-
pensable parties and on the merits.

Our attention will be directed solely
to the indispensable parties issue inas-
much as we deem it to be critical and
dispositive on this appeal.

The facts are detailed in the district
court's opinion, D.C.N.J.1957, 156 F.
Supp. 316. Only the following facts,
relevant to our consideration, need here
be stated. On May 14, 1956, Brodsky, a
New York resident, and a stockholder in
Bank, commenced an action against it to
adjudicate the invalidity of the annual
stockholders meeting held on January
10, 1956 and the election of directors
thereafter. Bank answered Brodsky's
complaint and filed a counterclaim seek-
ing an adjudication that a certain lease-
hold agreement entered into between
Bank and one Charles F. Noyes was null
and void and of no effect. Bank had sold
an office building, part of which it occu-
pied, to Noyes in July 1954 and co-in-
cident with the sale executed a lease for
its banking quarters for a 21-year term
at an annual net rental of $18,000. Brod-
sky, together with three others, on April
1, 1955, acquired title, by purchase, to
the office building subject to the Bank's
lease. Bank paid rent to Brodsky and
his co-title holders from April 1, 1955
until the filing of the counterclaim on
June 18, 1956 pursuant to a notice to do

so which had been given to it at the time Brodsky et al. took title.

The notice referred to reads as follows:

"Pamb Realty Associates
1441 Broadway
New York 18, N. Y.
CHickering 4-7758
April 1, 1955

"Mr. E. F. Blakey, President
The Perth Amboy National Bank
Smith Street
Perth Amboy, New Jersey

"Dear Sir:

"This is to advise you that the undersigned has purchased the building and premises at the corner of Smith and State Streets, Perth Amboy, New Jersey, in which you are the tenant under a lease heretofore made on July 15, 1954 Eugene D. Jauregui as landlord, and The Perth Amboy National Bank as tenant.

"Kindly pay all rent and other charges from and after April 1, 1955 to Pamb Realty Associates, Room 2906, 1441 Broadway, New York City.

"Very truly yours,
Pamb Realty Associates
By Bernard H. Kayden
[signature]" [1]

With respect to the nature of the title held by Brodsky et al., Bank made these assertions in its counterclaim.

Par. 1. First Count: [2]

"Bernard H. Kayden, Herbert J. Kayden, Irving Brodsky and Henry Smith are the owners of certain premises commonly known as 313 State Street, in the City of Perth Amboy, County of Middlesex and State of New Jersey, *holding said property individually and as partners* under the partnership name of Pamb Realty Associates; all of said persons being residents of the State of New York." (Emphasis supplied.)

Par. 11. First Count:

"Upon the same date as aforesaid, namely, April 1, 1955, the aforesaid Harry Casper [nominee of Ralph F. Noyes] did convey the aforementioned premises to Bernard H. Kayden, Herbert J. Kayden, Irving Brodsky, plaintiff herein, and Henry Smith, who presently hold title *in fee simple* to the aforesaid premises." (Emphasis supplied.)

Prior to the hearing on the counterclaim, Brodsky withdrew his complaint against Bank. The hearing on the counterclaim was concerned almost entirely with evidence offered by Bank to establish that the lease which it sought to have nullified was tainted by fraud practiced by those in control of its affairs at the time the office building was sold and the lease negotiated. Incidentally, no testimony was adduced to show that Brodsky or his co-title holders were in the picture at the time of the sale or the negotiation of the lease. With respect to the nature of the title held by Brodsky and his co-title holders Bank rested on the assertions made in its counterclaim.

The District Court found as a fact (Par. 6, Findings of Fact) "that [the] property was conveyed to Brodsky and his three associates as co-tenants" and (Par. 7, Findings of Fact) "Brodsky and his co-tenants were not in any way involved in the consummation of the sale and leaseback between the Bank and Charles F. Noyes."

■■ On review of the record we can find no reason to say that the finding of the District Court that Brodsky and his three associates held title as co-tenants, or tenants in common, was "clearly erroneous" and accordingly it must prevail. In this connection it may be pointed out that under New Jersey law it is settled that " * * * the burden of estab-

---

1. Bernard H. Kayden was one of the three men who had taken title to the property together with Brodsky; the other two were Herbert J. Kayden and Henry Smith.

2. The counterclaim contained 5 counts.

lishing a partnership is upon the one who alleges it to exist, Cornell v. Redrow, 60 N.J.Eq. 251, 47 A. 56 * * *."[3] Here there was indeed no direct evidence offered that Brodsky and his co-title holders were engaged in any partnership, and in their reply to the counterclaim they specifically denied that they held title to the bank building as co-partners.

 The District Court's fact-finding that the title was held by Brodsky and his associates as tenants in common calls into play the rule that failure to join indispensable parties is fatal to any complaint or counterclaim. Here the counterclaim sought to nullify the lease on real estate held by four tenants in common and since any adjudication would affect the interest of all the tenants they were indispensable parties.

In Knikel v. Spitz, 1908, 74 N.J.Eq. 581, 70 A. 992, in which a suit to cancel deeds on the ground of fraud, brought by the heirs of the ancestor, it was held (at page 994 of 70A.) that " * * * all these tenants in common should be joined as parties." See also Rule 19(a), Federal Rules of Civil Procedure, 28 U.S.C.A. As long ago as Shields v. Barrow, 1854, 17 How. 129, 139, 15 L.Ed. 158, indispensable parties were defined as: "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity or good conscience." For an excellent discussion of "indispensable parties" see State of Washington v. United States, 9 Cir., 1936, 87 F.2d 421; see also Martucci v. Mayer, 3 Cir., 1954, 210 F.2d 259.

In conclusion it need only be said that it is so crystal clear that the interests of Brodsky's co-title holders would be affected by the adjudication of nullity with respect to the Bank's lease that there was here a failure to join indispensable parties and such failure is fatal.

For the reasons stated the judgment of the District Court dismissing the counterclaim will be affirmed.

---

3. Fenwick v. Unemployment Compensation Commission, 1945, 133 N.J.L. 295, 44 A.2d 172, at page 175.