McKinley L. Phillips, J.
The plaintiff is a doctor of medicine residing in the City of Buffalo. He was a brother-in-law of John 0. Brady, the president of J. C. Brady Ford Sales, Hlc., during the period of time with which we are concerned in this litigation. The defendant is a commercial bank, including among other things the financing of auto dealerships. In 1964 a Ford dealership was set up at Dunkirk, New York, by J. C. Brady Ford Sales, Inc., hereinafter referred to as the dealer. Mr. Brady was the principal stockholder and officer of the corporation. On November 5, 1964, the dealer entered into a floor-plan security agreement with defendant, hereinafter referred to as the bank.
In January, 1965, the plaininff purchased a new 1965 Ford automobile through Brady from the dealer for $3,790. On this amount the plaintiff was allowed $2,295 on a used Ford trade-in, leaving a balance of $1,495 which was carried on the books of the dealer as an open account. *
On or about August 11, 1965, Brady, the plaintiff’s brother-in-law, approached the plaintiff for a loan of $2,500 for the dealer. The plaintiff informed Brady that instead of loaning $2,500 he would pay the amount unpaid on his car, and that the balance would be considered a loan. While the check was made out to Brady personally, it was deposited and used by the dealer. The plaintiff was thereupon credited with the payment of the balance due on his account with the dealer. The loan was subsequently repaid to the plaintiff, as were other loans which were made at later dates, for the benefit of the dealer. At the time that the plaintiff purchased the 1965 Ford, title was transferred to him by the dealer, and thereafter he registered and re-registered the car in his own name. He also purchased insurance in *886 his own name. From time to time repairs were made to the car with the plaintiff also paying for these. At all times subsequent to the purchase of the car, the plaintiff proceeded in a manner consistent with absolute ownership of the car, and his title thereto was not questioned until the occurrences hereinafter to be related.
In September, 1966, the plaintiff leased a new car from a Buick agency in Buffalo, and at the same time he placed the car in question on its used-car lot for sale. It remained there, unsold, for several months. Following a conversation Avith Brady, the plaintiff agreed to let him take the car for the purpose of finding a buyer for it. Brady had the car towed to the dealer’s used-car lot in Dunkirk, and the plaintiff paid the towing charges. The car remained there and was among others seized and taken into possession by the bank on January 7, 1967, under its contract with the dealer. Pursuant to an arrangement between the parties, the car was later sold for $1,402.75 at public sale and this action was brought to recover said sum.
An examination of the floor-plan security agreement leads me to conclude that the agreement, insofar as automobiles were concerned, covered only those actually owned by the dealer. The agreement gave the bank “ a security interest in the dealer’s inventory (as that term is hereinafter defined) now owned, as well as any and all hereinafter acquired inventory. ’ ’ The definition of ‘ ‘ inventory ’ ’ as set out in the agreement ‘ ‘ means goods, merchandise and other personal property now owned or hereafter acquired by the dealer which are held for sale or lease ”, etc. It seems clear that the ‘ ‘ hereafter acquired ’ ’ clause was intended to cover, insofar as cars were concerned, only those actually OAvned by the dealer.
I am of the opinion that the agreement did not cover any cars OAvned by third persons, such as this plaintiff, which Avere merely in the temporary possession of the dealer, as an agent, for sale purposes in which the dealer’s only interest was in a commission in the event that a sale was consummated. The relationship between the plaintiff and the dealer in this case was that of “ entruster ” of the vehicles so that the rights of the plaintiff as OAVtier of the car prevail over any rights the defendant has under its floor-plan agreement. (Uniform Commercial Code, § 2-403, subd. [3]; § 1-201, subd. [9]; Gricar v. Bairhalter, 11 Pa. D. & C. 2d 723; Allgeier v. Campsisi, 117 Ga. App. 105.)
Accordingly, I direct that judgment be entered in fayor of the plaintiff and against the defendant for $1,402.75, Avith interest and costs.