**In the Matter of Thermo-Sentinel Corporation, Debtor.**

**THERMO–SENTINEL CORPORATION, Plaintiff-Appellee,**

v.

**CLAD METALS, INC., Defendant-Appellant.**

Civ. A. No. 77–109.

United States District Court, W. D. Pennsylvania.

Feb. 22, 1977.

As Amended Feb. 24, 1977.

Jeffrey A. Kay, Pittsburgh, Pa., for Thermo-Sentinel Corp.

G. Robert Moore, Pittsburgh, Pa., for Clad Metals, Inc.

## OPINION

WEBER, Chief Judge.

This is a petition for review of an Order of the Bankruptcy Court.

A Debtor-in-Possession under Chapter XI of the Bankruptcy Act, Thermo-Sentinel, brought this action in the Bankruptcy Court to determine the ownership of certain metal discs and finished cookware in the possession of Vita Craft Corp. in Shawnee, Kansas. The metal in question was shipped by defendant Clad Metals, Inc. to Vita Craft pursuant to purchase orders of Thermo-Sentinel. In simplest terms the dispute is over whether the ownership of the goods passed to Thermo, despite its non-payment, or whether Vita received these goods as Clad's agent and Clad retained title until delivery of the finished goods by Vita pursuant to C.O.D. sales. Vita Craft has ceased fabricating the metal discs into cookware under threat of litigation by Clad until the ownership of the metal discs is determined. Vita Craft claims no title to the metal but holds the metal and the fabricated cookware under a security agreement with Thermo. The Bankruptcy Court held that title to the goods was in Thermo-Sentinel, the Debtor-in-Possession.

Rule 810 of the Bankruptcy Rules of Procedure provides that the district court "shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses."

Defendant raises five grounds for reversal, which may be summarized as follows:

(1) failure to dismiss for failure to join Vita Craft Corporation;

(2) holding that the metal in question is the property of Thermo is clearly erroneous;

(3) failure to find Vita was agent of Clad is clearly erroneous;

(4) holding that the three party agreement of September 15, 1971 modified the security agreement between Vita and Thermo dated January 10, 1971 is clearly erroneous and not supported by evidence;

(5) error in enjoining Clad from enforcing its rights against Vita.

The discussion may be separated into three areas: (1) whether Vita was an indispensable party, (2) whether the facts support the findings of the bankruptcy court, and (3) whether the relief granted by the bankruptcy court is too broad.

### (1) *Indispensable party.*

Clad contends that since Vita claims a security interest in the metal, it is an indispensable party which is subject to the bankruptcy court's nationwide service of process.

Thermo counters that while Vita has a security interest in the metal based on Thermo's ownership, Vita has not asserted any ownership in the metal and is willing to abide the determination of this court. Further, Thermo contends that there is not jurisdiction in the bankruptcy court, and that since Vita has possession of the property to which Thermo makes claim, a plenary action would have to be brought in a court of appropriate jurisdiction.

*Brodsky v. Perth Amboy National Bank,* 259 F.2d 705 [3d Cir. 1955], cited by Clad, does not govern this case. There the court held that plaintiff, one of four joint tenants, could not proceed to nullify a lease to certain real estate in the absence of the other three joint tenants, inasmuch as any decree so ruling would affect the property interests on the other three tenants as well.

Here Vita's interest in this metal is merely a security interest in metal of Thermo in Vita's possession. An adjudication that Thermo does not own the metal in question likewise extinguishes any claim of Vita's. The joinder of Vita does not appear necessary, particularly since Vita does not claim ownership in the metal. Further, since the bankruptcy court adjudicated the controversy in favor of Thermo, no harm has been done to Clad by failing to join Vita as might have been the case in the event of a contrary finding which would leave Clad with a partial adjudication of its rights.

*(2) The bankruptcy court's findings are not clearly erroneous.*

The record supports the findings and legal conclusions of the bankruptcy court and shows its decision to be not "clearly erroneous."

Thermo's basic set of cookware, which is manufactured by Vita, consists of 21 pieces, of which seven are made from bonded metal. Clad Metals is a supplier of bonded metal. From time to time Thermo directs Vita to manufacture a particular piece of the 21 piece set. That piece is manufactured in lots of 1000 to 2000 items. The bonded metal obtained from Clad is used for part of some of the pieces; other metal for the cover and the handle are obtained from other sources.

Vita then stores the finished pieces until Thermo requests delivery. Delivery is made either in complete sets of 21 pieces, or in groups of pieces of a particular type. At the rate Thermo requested finished pieces from Vita, as much as six months may have elapsed between the time Clad shipped the metal discs until Thermo received the last of the finished cookware fabricated from that shipment of metal.

Thermo acquired the metal from Clad by placing an order with Clad directing it to deliver the metal to Vita. Clad would ship the metal and send Thermo invoices reading "sold to" Thermo-Sentinel and "shipped to" Vita Craft, the terms of sale being "net 30 days." Clad kept a running account of Thermo's indebtedness and billed Thermo on a monthly basis for all unpaid balances, including a service charge for past due invoices.

Thermo's indebtedness to Clad reached a point to cause Clad concern, so that about September 15, 1971 a three-party agreement was reached. Under this oral agreement, Thermo would pay $25 (later increased to $35) each time Thermo ordered a complete set of cookware from Vita. The cookware would be delivered C.O.D. to Thermo by Vita for $110, of which $25 would be remitted from Vita to Clad. In addition, Thermo made substantial payments "on account" directly to Clad to reduce its indebtedness. The Bankruptcy Court found that the amount of metal supplied by Clad in any one set of cookware was unascertainable, as metals were also obtained from Allegheny Ludlum and other suppliers, and that the sum of $25 or $35 per set collected by Vita for Clad were to reduce the entire past due indebtedness and had no relation to the metal actually used in the manufactured set.

The trial transcript reveals the following additional facts. Clad imposed a 1% per month carrying charge on the outstanding balance. Thermo carried property insurance on the metal in Vita's possession. Also, the invoices issued by Clad reflect a sales transaction upon order and shipment. All of these factors indicate ownership in Thermo.

The bankruptcy court relies on *In the Matter of Samuels & Co. Inc.*, 526 F.2d 1238, 1248 [5th Cir. 1976] and *In re Kravitz*, 278 F.2d 820 [3d Cir. 1960] for the conclusion that the rights of an unpaid cash seller are subservient to the rights of a secured creditor or the lien of a trustee in bankruptcy as an ideal execution creditor under Section 70(c) of the Bankruptcy Act. Clad would distinguish these cases on the grounds that they apply only when the goods have been delivered to the buyer, and that here the goods were delivered to, in Clad's opinion, Clad's agent Vita. Clad particularly notes U.C.C. § 2–401(1) where it is stated, inter alia, that "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."

In the fact of an oral agreement with many terms left undefined, it is naturally difficult for Clad to show an "explicit" agreement as to when title passes. U.C.C. § 2–401(2) is more to point, and contrary to Clad's position:

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place *at which the seller completes his performance with reference to the physical delivery of the goods,* despite any reservation of a security interest and

even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by a bill of lading

    (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

    (b) *if the contract requires delivery at destination, title passes on tender there.* (emphasis added).

There is no other explicit agreement between Thermo-Sentinel and Clad respecting the passing of title. Nor is there a reservation of a security interest.

The parol agreement between the parties respecting the payment of a unit sum upon delivery of finished goods from Vita Craft to Thermo-Sentinel is no more than an agreement as to how Thermo-Sentinel's indebtedness to Clad may be reduced. It has no relation to the passage of title, nor does it make Vita Craft the agent of Clad to hold possession for it. Clad claims no security interest in the raw materials in Vita Craft's possession.

(3) *Appropriate relief.*

    ■ In one respect the Order of the Bankruptcy Court is overbroad. It enjoined Clad Metals, Inc. "from taking legal or other action against Vita Craft Corporation and/or the metals and goods of Thermo-Sentinel Corporation in its possession or otherwise in attempted enforcement of any alleged right to payments on account of Thermo's indebtedness to it on Vita's shipment of finished products made from metals it supplied to Vita at Thermo's request."

Not having Vita Craft before it, the Bankruptcy Court could not adjudicate rights between Vita Craft and Clad Metals, Inc. Vita Craft does not assert title to the metal. It rests upon its security interest as against Thermo-Sentinel. The restraint against Clad Metals was proper only insofar as it enjoined any action of Clad Metals as a creditor of Thermo-Sentinel to recover pos-

session of the metal. Clad should be free to pursue any remedies it has against Vita Craft which do not involve ownership, title or right of possession of the metal, or an attempt to enforce an unlawful preference as a general creditor of Thermo-Sentinel.