In re SITKIN SMELTING & REFINING, INC., Bankrupt.

WESGO DIVISION OF GTE PRODUCTS CORPORATION et al., Plaintiffs-Appellants,

v.

G.M. HARRISON, etc., et al., Defendants-Appellees.

No. 80–7892
Summary Calendar.

United States Court of Appeals, Fifth Circuit. Unit B

June 15, 1981.

Rehearing Denied Aug. 11, 1981.

Mayer W. Perloff, Perloff, Reid & Gibbons, Mobile, Ala., for Wesgo.

Jonathan N. Helfat, Otterbourg, Steindler, Houston & Rosen, New York City, G. M. Harrison, Sr., Trustee and Merrill & Harrison, Dothan, Ala., for Harrison and Siegel.

Johnston, Barton, Proctor, Swedlaw & Naff, Sydney Lavender, Gilbert E. Johnston, Jr., Birmingham, Ala., for C.I.T.

Before RONEY, HENDERSON and ANDERSON, Circuit Judges.

RONEY, Circuit Judge:

This case presents a single issue: whether the bankruptcy court erred in holding that scrap material in the possession of a bankrupt metal refiner should be given to a secured creditor of the refiner rather than to the seller of the scrap. This turns on the correctness of the court's findings of a contract for sale rather than a bailment. We affirm.

Prior to its bankruptcy, Sitkin Smelting and Refining was in the business of processing industrial waste for the recovery of precious and base metals. Sitkin had an agreement with plaintiff WESGO Division of GTE Products Corporation to process certain scrap material. At WESGO's option, Sitkin agreed to either purchase the precious metals recovered upon processing or return metals of like kind and quality less a processing fee. The metals actually recovered from WESGO's scrap could not be returned, because during the refining process the metals from one client's scrap were commingled with those from other scrap.

When Sitkin was adjudicated bankrupt, it had in its possession thirty-five drums of scrap material that had been delivered by WESGO. WESGO filed this suit to reclaim the unprocessed scrap.

The parties argue, and this Court agrees, that Pennsylvania law governs the dispute. *See, e. g., Fowler v. Pennsylvania Tire Co.,* 326 F.2d 526, 530–31 (5th Cir. 1964); *Universal Medical Services, Inc. v. Kutcher,* 460 F.2d 524, 526 (3d Cir. 1972). The controlling statute is section 2–403 of the Uniform Commercial Code, adopted in Pennsylvania. Pa.Stat.Ann. tit. 12A, § 2–403. To "promote the greatest range of freedom possible to commercial vendors and purchasers," *In re Samuels & Co.,* 526 F.2d 1238, 1242 (5th Cir. 1976) (*en banc*), section 2–403 permits transferors of property to pass greater title in certain circumstances than they can themselves claim.[1]

---

1. Section 2–403 provides in pertinent part as follows:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:

(a) The transferor was deceived as to the identity of the purchaser, or

(b) The delivery was in exchange for a check which is later dishonored, or

(c) It was agreed that the transaction was to be a "cash sale," or

(d) The delivery was procured through fraud punishable as larcenous under the criminal law.

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

**254**

Subsection (1) applies where the bankrupt was a *purchaser* of the goods in question; subsection (2) where the bankrupt holds the goods as a *bailee*. Subsection (1) provides that a buyer of goods who holds only voidable title has the power to transfer good title to a "good faith purchaser." A secured creditor may be a "good faith purchaser" within the meaning of subsection (1) and may thus take good title to property to which its security interest attaches. *See In re Samuels & Co., supra. See also Los Angeles Paper Bag Co. v. James Talcott, Inc.,* 604 F.2d 38 (9th Cir. 1979); *In re Thermo-Sentinel,* 426 F.Supp. 1179 (W.D. Pa.1977). Subsection (2) provides that a bailee who is entrusted with goods has power to transfer good title only to a "buyer in ordinary course of business." A secured creditor is specifically excluded under the Uniform Commercial Code from being a "buyer in ordinary course of business." *See, e. g., In re Sitkin Smelting & Refining, Inc.,* 639 F.2d 1213 (5th Cir. 1981); *In re Medomak Canning Co.,* 25 U.C.C.Rep.Serv. 437 (D.Me. April 21, 1978; *aff'd* 1st Cir. November 21, 1978); *Cosgriff v. Liberty National Bank & Trust Co.,* 58 Misc.2d 884, 296 N.Y.S.2d 517 (1968). *See generally* Annot., 87 A.L.R.3d 11, 34–36 (1978). Thus, a secured creditor prevails against a seller of goods to a bankrupt, but not against a bailor.

■ This case, then, turns on whether WESGO was a seller or a bailor. A review of the agreement between the parties, as reflected by the letters exchanged and the testimony concerning their conversations, shows the bankruptcy court did not err in finding a contract for sale rather than a bailment. The agreement was essentially a contract for the sale of future goods. Pa. Stat.Ann. tit. 12A, § 2–105(2). Sitkin agreed to purchase the scrap material, with payment in the form of a purchase price established by an agreed-upon formula or in refined metal of like kind and quality. *See Guidry v. Continental Oil Co.,* 350 F.2d 342 (5th Cir. 1965). *See generally* 67 Am.Jur.2d *Sales,* § 30 (1973).

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession re-

■ Our decision in *In re Sitkin Smelting & Refining, Inc.,* 639 F.2d 1213 (5th Cir. 1981), does not suggest a contrary conclusion. In that case, which involved another claim arising out of Sitkin's bankruptcy, we found a bailment of scrap materials to Sitkin, and therefore held the bankruptcy court erred in giving possession of the scrap to the secured creditor rather than to the entruster, Eastman Kodak. The transaction between Kodak and Sitkin differed in three key respects from the transaction here. *First,* the agreement, which we described as "somewhat unique," clearly gave Kodak the option to demand the return of the *scrap material,* rather than only the refined metals. In this case, while the testimony was conflicting, the court reasonably concluded WESGO was not entitled to demand the scrap prior to its processing. *Second,* Sitkin had an option under the agreement with Kodak to cancel the contract and return the scrap, unless Kodak thereupon demanded that it be processed. Sitkin had no such right under its agreement with WESGO. It is well settled that the unconditional promise to purchase and pay indicates a sale rather than a bailment. *See, e. g., Sandack v. Tamme,* 182 F.2d 759 (10th Cir. 1950); *Royal Indemnity Co. v. Aetna Insurance Co.,* 231 F.Supp. 657 (D.Md.1964), *aff'd,* 338 F.2d 700 (4th Cir. 1965); *In re H. M. Hodges & Bros.,* 38 F.Supp. 597 (D.Conn.1941). *Third,* the agreement between Kodak and Sitkin as well as the surrounding circumstances clearly established the parties intended for title to remain in Kodak until the scrap material had been processed. Kodak was not willing to sell outright the unprocessed scrap for two reasons: first, since the scrap consisted of inferior film, Kodak was concerned that it not find its way into the possession of persons who would use it as film; and second, collateral litigation made it important that the film not fall into the hands of Polaroid, for whom Sitkin had also been disposing of film waste. 639 F.2d at

gardless of any condition expressed between the parties to the delivery or acquiescence . . . .

1214. In the present case, there was no such intention for WESGO to retain title to the scrap material. Absent such an intention, title passed upon the delivery of the scrap to Sitkin. Pa.Stat.Ann. tit. 12A, § 2–401(2).

Under section 403(1), Sitkin could pass title to a "good faith purchaser." As a good faith purchaser, the secured creditor was entitled to prevail against WESGO.

AFFIRMED.